Good morning, Your Honor. Honors. J. David Stackman of Reich, Dell, and Civitan for the Plaintiffs, Trustees of the Southern California I.B.W.N.E.C.A. Pension Trust Funds. I'd like to reserve most of my time for a rebuttal reply, perhaps 15 minutes. I just briefly want to make a statement regarding the case, what it is about and what it's not about. What this appeal involves is whether contributions should be made for electricians employed by the appellee, Flores, on a project covered by a project agreement for three months, basically October through December 2003. The project agreement clearly requires contributions be made on their behalf, but the appellee did not make those contributions, and the district court found that he did not have to. We believe this is completely contrary to the clear terms of the agreement. Well, the question, I suppose, is, is the language ambiguous or not? Obviously, Judge Cooper held that it was. What's your response? There's no ambiguity. If there was, what the district court said was the ambiguity was not the issue that she looked to extrinsic evidence for in any case. The alleged ambiguity was whether nonunion employees were covered. Well, where do we go for the determination of who the covered employees are? What section is that? Is that 3.7? Well, we have to start with the recognition clause of the agreement, which is section 4.1, which recognizes the affiliated unions, which is more than a dozen unions, as the exclusive bargaining representative for the employees engaged in project work covered by this agreement, but only when such employees are engaged in covered project work. Project work is extensively defined in the agreement. That's pretty much all of Article III, and there's many provisions about what is and what isn't covered. In this case, we're talking about electricians working on a project, and there's no question, there's never a dispute that this is covered work, this is a covered project, they don't come within any of the exclusions, and we're only talking about the period when they are engaged in project work. The agreement also provides that all contractors, section 1.9, that contractors and subcontractors, such as the employer here, agrees by accepting the award of a construction contract, agrees to be bound by all the provisions. But where do we go for the specific question of who, which employees are covered? I'm looking at 3.7. It says the agreement shall apply only to construction craft employees and not to technical executives. Would that take care of it, in your view? Yes. There's no question here that these are construction craft employees. This agreement is between the school district and various construction trade unions, as it says in the very beginning, and their contracts are incorporated. So we look to the jurisdiction of each of those contracts to see who are construction craft employees. How did Judge Cooper go wrong, then? I believe she went with the assumption that non-union employees are not covered. I believe that's the basis of the erroneous decision. And I think the law is clear that the opposite presumption applies, because we cannot discriminate or distinguish between employees and their benefits based on their union status. So the presumption should be that non-union employees are included. But she came from the opposite presumption, and because the agreement does not specifically say non-union employees are covered, she presumed that they are not. Well, then maybe we should hear from the other side and have Judge Cooper's position articulated, and then you'll have plenty of time to respond. Thank you. You're welcome. Good morning. Marla Hendrickson for Mr. Flores and DHS Electrical Contractors. We've extensively briefed this matter, but I'm happy to proceed if there's any particular areas that should be addressed. Well, the question that occurred to me, and you heard our colloquy, is why doesn't 3.7 of the PSA take care of the problem? It says this agreement shall apply only to construction craft employees and not to technical executives, managerial, and so forth. Doesn't that describe who the employees are that are covered in this plan? It may, in fact, identify many of those. As the Court's aware, by looking at 3.7, there are many exceptions to who is covered. Well, then, is there any exception in 3.7 that's dispositive of this case? Well, one of the issues, of course, is not being pursued by the other parties. So it's really a non-issue. But the only issue before us that relates to these exclusions deals with, and this is the scope of the agreement, goes on to union recognition, project hiring, wages, and benefits, which is part of it. Is that somewhere under 3.7? That's part of the PSA agreement under Article IV, the following section. All right. What section? That's Article IV. Right. And it's entitled union negotiation, project hiring, wages, and benefits. Clearly, this is the article section of that PSA agreement that's to describe, specifically, the union obligations and the duties and obligations of both parties. And it's under this particular section that the ambiguity is created. Well, help me figure that out. I'm searching for the ambiguity. I don't see it yet. It says, 4.1, the contractor recognizes the council and its affiliated unions as the exclusive bargaining representatives for the employees engaged in project work covered by this agreement. All right. We don't dispute that work was performed on this project or the PSA itself. The scope of that agreement is to cover, and the intent is to cover, work performed on that agreement in certain limited categories. However, that's only one aspect of the definition. When you get into what the union, what the representation rules are and the project hiring and the duty to pay wages and benefits, that comes out in Article IV. Let me ask you this. Are your, excuse me, are the non-union employees construction craft employees? Yes. Why isn't that the end of the game? Some were not. What do you mean some were not? Well, some were not. Which ones? The guys who were digging the ditch outside? That's not part of the fight. As far as the issues in this case goes, we're really talking about the craft employees. That's right. We are talking about only craft employees. So all the employees at issue here are construction craft employees? Not all of the employees are construction craft employees. I said all the employees whose benefits are at issue are construction craft employees. The ones that are currently at issue because the appellants have not pursued their two other claims. Well, the guys who dug the ditch are not part of this case. That's right. Yes, that's correct. But if it's true, it seems to me that if all of the employees, all the non-union employees at issue are construction craft employees, the section that Judge O'Scanlan read to you pretty much is, that's the end of the case for me. It sounds like they're covered. That is to say they are, quote, covered employees, close quote. Well, that may mean that the work that they do is covered under the PSA agreement, but that does not mean that there's a duty to pay for those non-union craft workers, and that's where the issue comes out. But you've got Section 4.4 that says the unions and contracts agree that they will not discriminate against any employee on the basis of race, color, religion, and so forth. Union status, doesn't that nail it shut? You cannot treat union and non-union members differently under this particular agreement. Absolutely not. It is not discriminatory in any way. The facts indicate that my client did everything possible to fall under the terms and comply with the terms and conditions that were being identified specifically by the union under this contract. And what occurs here is we've got two very special situations, and what I call exceptions here. First of all, under this PSA agreement, remember that core employees are not required to join in the union. So if you have a contractor who has a core workforce that was on his payroll for at least 50 out of the 100 days prior to the commencement of this project, they don't have to go through the union at all. And there's nothing in this contract that indicates that they have to pay benefits to the union. It does indicate that the contractor is obligated to pay prevailing wages, but that's a different issue. So if you have a contractor... Let me ask you this. The money, the benefits, the benefit payments that are at issue here go into the union's pension trust fund? Is that where they're going to go? The union pension trust funds, that's correct. And who's entitled to get distributions out of this union pension trust fund when distributions are made? All workers or only union workers? Workers who have registered with the union and union workers. So a non-union worker cannot obtain benefits. The benefits itself, deposits can be made by the employer, but no benefits can be paid to the non-union person unless and until they have registered with the union, filed paperwork, and gone through that sort of thing. And are the workers here, the non-union workers here at issue, entitled to register? Now we're getting down to the nitty-gritty. Well, I'm not sure we are. This may be disposed of simply by the language of covered employees and construction staff employees, but I'm curious as to how this operates. The PSA agreement does say that core workers are to register with the hiring hall. It does say that. The ambiguity is created because there is no specific obligation. Now here the PSA says you have to register with the hiring hall, but nothing specifically says that those core employees have to register with the union or that they have to pay dues and benefits. But it may be that the entitlement of a non-union worker on whose behalf payments have been made into the pension fund has an entitlement to share in that pension fund as a beneficiary independent of this particular agreement. I mean, I just don't know the answer, but I'm just trying to figure out do these non-union workers get the advantage of the payments that have gone into the pension fund supposedly on their behalf? Well, there's plenty of testimony in the record that we've submitted and identified in the briefs that identify that, again, an employer cannot make deposits on behalf of non-union workers with the union trust fund unless that union, unless that employer first signs a subscription agreement. You know, I'm not asking about the obligation of the employer to pay in. I'm asking about the ability of the employee to get benefits out of the pension fund, and it may be beyond the scope of what's in the record here. They're intertwined because a non-union employee will never get benefits from the union unless the employer has put them in. So as a condition to any non-union employee obtaining benefits, the employer must first have deposited them, and the employer cannot deposit until they've submitted a subscription agreement. Once the subscription agreement has been submitted and accepted by the union, then still the employees cannot be paid. And the witnesses testified that that's the case. The benefits cannot be paid to non-union members until a non-union member registers with the union. So that's one area of core workers, but there's another category of workers that really makes this agreement most ambiguous, and this is where a contractor goes to the union and attempts to get union workers, as is identified as the principal obligation of the unions under these agreements, and the union fails or refuses to provide workers within a specific period of time. Well, that's this case. Yes. And once that happens, it could be. But as I read the record, who is a covered employee, I'm afraid I'm not being convinced that that's an ambiguous term. It may be ambiguous or difficult, but it's off to one side for me as to whether someone who's a non-union covered employee at the tail end, years down the road, can get pension. But that to me is a different question. It may go to whether it's a sensible statutory structure. It may go to the question of whether it's a good collective bargaining agreement. It may go to the question of whether it's fair. But that doesn't go to the question as to whether or not they're covered employees within the meaning of this agreement. Once that category, it's our contention that it is not clear that employees obtained by the employer when the union will not provide them, that they are covered workers under this agreement. And that is because in that particular section of the agreement, which is I believe 411. No, I'm sorry. That's not 411. 411. 411, now that you mention it, doesn't seem to help your case. Oh, yes, I believe it does, Your Honor. It says that contractors shall pay health and welfare and pension and other benefits on behalf of the covered employees to the appropriate benefit plan. Well, it says contractors that are not signatory to the union shall execute a subscription agreement. This is one of the three clauses that the court indicated was ambiguous to her. And because it does appear here that my client, who was not a union signatory contractor, he's non-union, was required to execute a subscription agreement. But this subscription agreement was never given to him or accepted by the union until December 8th, when they finally agreed that it was signed and that he was accepted and he could now obtain electricians from the union.  But as to and there's no doubt that once the signatory agreement was accepted by the union and we and my client received workers, the obligation arose to pay welfare pension and he did pay all such welfare benefit amounts that were due to the union and processed and registered his employees through the union. He complied fully. But until that point, he had all of this was in the control of the union. And his choice was either don't perform the project, which would be discriminatory, because it would give an advantage to a union signatory over a non-union contractor. And his choice was not do the project or obtain employees on his own. Okay. So. Thank you, counsel. I'm sorry. I've got one last question, which can be pretty quick. There's a relatively small amount of money here at stake. Why is it worth litigating this in the district court and all the way up here over this small amount of money? The 800 and some dollars that. That's whatever it is, $16,000. There's a very small amount that counsel has raised. Is this a repeat player question for your client? That's my question. I'm sorry. Is this a repeat player issue for your client? That is to say, is this an issue that arises a lot for your client? Because I'm assuming that he's paying more in attorney's fees than is at issue in this particular case. That's correct. If he doesn't owe the money, he does not owe the money. And that is the issue. Okay. All of these have been paid. I won't pursue it further. Thank you. Okay. Thank you, counsel. Mr. Sackman, you have some reserve time. Yes, thank you. The main thing I'd like to point out is to clarify some of the things that were said, especially the responses to Justice Fletcher's questions about who's entitled to benefits, because that is important. The non-union employees are entitled to benefits, and that's why I'm here. My client is trustees. They have a fiduciary obligation to all the participants and beneficiaries of these trusts, whether they're union, non-union, whatever, and they have a fiduciary duty to make sure those contributions get in. That's why I'm here. They do get benefits from it. In fact they do. And what's the range of benefits that come out to them? There's a pension fund, but I assume it's health and other things. Well, there's actually numerous funds. There's two different pension funds, a defined benefit, defined contribution, vacation. The vacation, for example, the money goes in and it just goes right back out to the employees. The pension, it's a defined benefit. Pension actually is required to give credit to these employees, even though we haven't collected the money. That's not true of the health fund. There's different benefits. They're entitled to all of them, and that's why we're here. Counsel, would you respond to Ms. Hendrickson's argument? As I understand the essence of her argument is the ambiguity was created where there was no specific obligation to register the core employees. That created the ambiguity here. Would you respond to that? Well, first of all, what referred to as registration from the trust fund's point of view, that's only how the trust funds find out that these employees are out there. They can't credit their benefits or give them their benefits or communicate their benefits until they find out who they are, what their address is, and all of that. I think what counsel is referring to is the requirement of the union to dispatch workers. And the union does have a requirement under the project agreement to dispatch workers, and in this case we stipulated that they did not do that on time. But that does not affect the obligation to contribute. What they're saying basically is because the union took so long to meet its obligation to dispatch workers, they're excused from their obligation to pay contributions for the workers they did use. And the Supreme Court dealt with that argument half a century ago in the Lewis case, where the employer defended also on a contribution action, saying that the union breached its obligation not to strike, and therefore it doesn't have to pay contributions. The Supreme Court says one doesn't have anything to do with the other. We're not going to make employees' contributions or benefits dependent on what the union does or doesn't do. The law is clear under the Lewis case, under the Taft-Hartley Act, under ERISA, that these employees, these electricians who worked from October to December, they're supposed to look at a clear, written agreement to find out what benefits they have. They're not supposed to look at whether the union dispatched workers or didn't or met some other obligation. They're not supposed to look at what Mr. Flores understood or thought he understood about what the agreement means. They're not supposed to look at what somebody told someone else. They're supposed to look only at the written agreement. And an employee looking at these agreements sees I'm here, I'm doing work on a covered project, I'm doing electrical work that's one of the construction craft work that's covered by this contract, so I'm entitled to benefits. And if they came into the trust funds and applied for benefits, they would be correct. And as to their pension benefits in particular, they are. Well, in the end, what provision in the PSA are you relying on, which creates the duty of the employer to pay into the trustees the benefits for covered employees? That specific provision is Section 4.11, and it says first that contract is not signatory. Such as the employer here shall sign a subscription agreement with the appropriate labor management trust fund covering the work performed under this agreement. And they did sign a subscription agreement, and according to this, it covers the work performed under this agreement. It doesn't say work performed after workers are dispatched or when they're registered. It's work performed under this agreement. And pay health and welfare, pension, and other benefits on behalf of the covered employees to the appropriate benefit plan. All right. And counsel has admitted that these are construction craft employees. They're covered. They don't come within any exception. They are entitled to their benefits here. Anything further, counsel? Just one further note on this whole discussion about registering the workers and being approved. There's nothing in the project agreement which says that an employer or employees have to be approved by the union. In fact, that's part of the deal in this project agreement. The union has to accept employers, whether they're union or nonunion, whether they like them or they don't. They don't have the discretion to approve them. They have to dispatch workers to them, whether they like them or not. And their obligation to contribute is based, the obligation of the employer to contribute is solely based on whether they perform the work. All of the work is covered. All of the work here is covered. So we ask that the judgment be reversed and that the district court be directed to enter judgment as to this issue for the contributions and other damages required by ERISA. All right. Thank you, counsel. The case just argued will be submitted for decision, and the Court will take its morning recess. Ten minutes. All rise. This Court shall stand in recess for ten minutes. Ten minutes. Ten minutes. Ten minutes. Ten minutes.  The pool at the hotel is either broken or they didn't have enough sunlight to help with the shaking. And maybe I'm working on ERISA's web. No, this morning when I was standing here, it was, I think, 53 in my town. I got to LA, it was 41. And I think it dropped. And I left it in the same pitch black. All right. Last one's gone. Go upstairs. Yes, please. Thank you. Okay. Is it warm in here? No, not really. I'm just going to stand here and let you know. Okay. Okay. I'm just trying to get more out. I know, it's crazy. Do you want to take this? Uh, yeah. I'll see if I can find a position for it. Is it warm in here? Yeah. Okay. All right. Okay. Yeah. Yeah, yeah. Okay. All right. So you guys are there. Yeah. That's good. That's very… It's slightly… It's slightly… Living and walking around. When do you guys get back? Friday. Friday afternoon? Yeah. Who's that? Was he at the dinner? No. So how are you guys getting in front of the… You don't want to… Oh, I'm going to go first. I'll go first. We're just… With time reserved. And then… Jimmy thinks he'll leave less time than I do. Sometimes it's all… There's stuff to do. A lot of time to do. I have no question. That was a lot to do. Who were you just… I was just thinking… Like, there's actually a ton. Right. And we'll need it. It might be… Far more than we'll need it. Just for the year. That's true. That's true. Yeah. Oh, yeah. That's a change. That's fine. Yeah. Okay. Yeah. I think it's one of those… So… All the states are there. So yeah, you're probably going to change a lot of snow. Or do you miss it? It's kind of nice to have familiar issues. Yeah. It's not all English jokes. There's more to it. Really? Yeah. It's pretty deep. Yeah. You're not going to miss it. It's really cool. It's fresher. Right? Yeah. That's what I was thinking. I'll check it out. Is this your first time out here? This is where I was. Yeah. Oh, okay. Yeah, we'll do Portland. Plus Seattle. Yeah. This is Seattle. All this fire… June… Where are you? Here. You're going to want to see our Heads Up camp before it's over. Right. Yeah. I don't know where he is. Because I told him to, as a courtesy. I didn't warn him. I'm just going to turn it into a vacation. But, um… Not necessary. All rise. This court shall resume session.
judges: Goodwin, O'scannlain, Fletcher